**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **JOHN DOE AND JANE DOE,** | * | |
| | * | **CIVIL ACTION** |
| **Plaintiff,** | * | |
| | * | **NO. _____** |
| **VERSUS** | * | |
| | * | **SECTION _____** |
| **UNIVERSITY HEALTHCARE SYSTEM, L.L.C. D/B/A TULANE UNIVERSITY** | * | **MAGISTRATE ____** |
| **HOSPITAL AND CLINIC AND TULANE MEDICAL CENTER, HEALTH CARE** | * | |
| **INDEMNITY, INC., and GENERAL ELECTRIC COMPANY, THROUGH ITS** | * | |
| **GE HEALTHCARE DIVISION,** | * | |
| **Defendants.** | | |

## NOTICE OF REMOVAL

**TO THE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA**

APPEARING through undersigned counsel pursuant to the provisions of 28 U.S.C. § 1332(a) and 1441, *et seq.*, General Electric Company, doing business as GE Healthcare (hereafter "General Electric"), a defendant, respectfully removes from the Civil District Court for the Parish of Orleans, State of Louisiana, in which this case is now pending under the name and style *John Doe and Jane Doe v. University Healthcare System, L.L.C., d/b/a Tulane University Medical Center and Clinic and Indemnity Clinic,* Civil Action No. 2011-1924, Division "M-13" (hereinafter referred to as the "State Court Action"), to the United States District Court for the Eastern District of Louisiana.  In support of this Notice of Removal, Defendant avers as follows:

This matter is being removed by Defendant, General Electric, on the basis of diversity under 28 U.S.C. § 1332(a) because the only properly joined parties to this action have diverse citizenship, and the jurisdictional amount in controversy is satisfied.  Defendant, General

Electric, is a citizen of a different state from the plaintiffs.  The other defendants, University Healthcare System, L.C., d/b/a Tulane University Hospital and Clinic and Tulane Medical Center (hereinafter, "TUHC"), and Health Care Indemnity, Inc., were improperly joined, because TUHC is a qualified health care provider under the Louisiana Medical Malpractice Act, La. R.S. 40:1299.41, *et seq.* ("LMMA") and is allegedly liable for medical malpractice, and as such TUHC is subject to review by a medical review panel prior to being made a defendant.  Further, Health Care Indemnity, Inc. is only sued in its capacity as an insurer of TUHC, and as such claims against that party are derivative of the claims against TUHC, and so are premature just as the claims against TUHC.

This action is a civil action at law in which the plaintiffs allege that they were exposed to infectious diseases, namely HIV, Hepatitis B and Hepatitis C, as a result of John Doe's endoscopic examination on November 19, 2010, and his subsequent marital relations with Jane Doe.[1]  Further, Plaintiffs allege that other patients were exposed to infectious diseases as a result of other endoscopies performed by TUHC between October 7, 2010, and December 1, 2010.[2]  Plaintiffs allege that the defendants failed to properly sterilize equipment utilized during endoscopic examinations, causing the alleged exposure.[3]  Plaintiffs also allege that other "similarly situated" people were affected by the negligence of the defendants, and seek certification of a class of such persons.

The plaintiffs named in this action, John Doe and Jane Doe, claim residency in Jefferson Parish, Louisiana.[4]

---

[1] *See* Plaintiffs' Supplemental and Amending Class Action Petition for Damages, ¶¶ 8, 9, 13, 15 attached hereto as Exhibit "1".
[2] *See* Exhibit 1, ¶ 11.
[3] *See Id.*
[4] *See* Exhibit 1, ¶ 1.

The defendants named in the State Court Action were TUHC, Health Care Indemnity, Inc., and General Electric.  Plaintiffs alleged that TUHC is a limited liability company domiciled and doing business in the State of Louisiana and within the jurisdiction of the Civil District Court for the Parish of Orleans.[5]  Plaintiffs alleged that Health Care Indemnity, Inc. is a "corporation domiciled and doing business in the State of Louisiana and within the jurisdiction of the Civil District Court for the Parish of Orleans.[6]  For purposes of this Notice of Removal, the state of citizenship of TUHC and its alleged insurer, Health Care Indemnity, Inc., is irrelevant, as those parties were improperly joined (*see infra*).

General Electric is a New York corporation with its principal place of business in the State of Connecticut.[7]

TUHC has raised the issue of the prematurity of suit against it in light of the LMMA in an exception of prematurity to the Civil District Court for the Parish of Orleans.  On September 1, 2011, the Judge Paulette Irons of the Civil District Court for the Parish of Orleans conducted a hearing on TUHC's Exception of Prematurity filed in this and other matters with which it was consolidated.  At the conclusion of the hearing on the Exception, Judge Irons denied the Exception from the bench.[8]  However, in the process of stating her decision, Judge Irons acknowledged that this issue would be appealed to the Louisiana Fourth Circuit Court of Appeal, and she indicated that written reasons for her decision would be forthcoming.  Notice of Intent was indeed provided by TUHC, and the accompanying Order of Judge Irons on such Notice was executed by Judge Irons on September 21, 2011.[9]

---

[5] *See* Exhibit 1, ¶ 3.
[6] *See* Exhibit 1, ¶ 4.
[7] *See* Entries for General Electric Co., from New York Secretary of State, Corporations Database and Connecticut Secretary of State, Corporations Database, attached hereto as Exhibit "2".
[8] The Civil District Court has not yet issued its order and written reasons for denying the Exception of Prematurity.
[9] Notice of Intent to Appeal and accompanying Order, attached hereto as Exhibit "3".

With all due respect to the state district court, should Plaintiffs' counsel file a motion to remand, if any consideration is to be given to the outcome of TUHC's Exception of Prematurity, General Electric strongly urges this Court to await the decision of the Louisiana Fourth Circuit and/or Louisiana Supreme Court before ruling on that motion.  In such circumstance, General Electric will file a motion to stay as it has previously done in the related matter of *Robiho, et al. v. University Health Care System, LLC, et al.*, 2:11-cv-01901-LMA-JCW, so that this Court may ensure that all parties' interests are preserved and that judicial economy is fostered.  The issue of Judge Iron's ruling has been briefed more fully in the *Robiho* matter, *supra*.

**A.     Complete diversity exists between the plaintiffs and the properly joined defendant, General Electric.**

On the face of the state court record, complete diversity of citizenship between the plaintiffs and all defendants would appear to be lacking.  However, TUHC and Health Care Indemnity, Inc. were improperly joined, because the claims against these defendants were subject to the LMMA and therefore review by a medical review panel is required before Plaintiffs could name them as defendants in a district court matter.  If TUHC and its insurer are disregarded as improperly joined, complete diversity exists between the plaintiffs, citizens of Louisiana, and Defendant, General Electric, a citizen of New York and Connecticut.

**1.      TUHC and its insurer were improperly joined.**

The federal removal statute, 28 U.S.C. § 1441(a), allows for the removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  Subsection (b) specifies that suits arising under federal law are removable without regard to the citizenship of the parties; all other suits are removable "only if none of the parties in interest *properly* joined and served as defendants is a citizen of the State in which such action is brought."  An in-state defendant is improperly joined with other defendants, and should be

disregarded for the purpose of determining diversity of parties, when there is "no reasonable basis for the district court to predict that the plaintiff might be able to recover against [that defendant]." *Smallwood v. Illinois Cent. R. Co.,* 385 F.3d 568, 573 (5th Cir. 2004).

In comparable matters before this court in recent years, this Court has answered the question of whether defendants similar to TUHC and its insurer in this matter would be improperly joined if the plaintiffs had not obtained the opinion of a medical review panel pursuant to the LMMA before filing suit.   In both *Jones v. Centocor, Inc.,* 2007 U.S. Dist. LEXIS 84717 (E.D. La. 2007) and *Senia v. Pfizer, Inc.,* 2006 U.S. Dist. LEXIS 32555 (E.D. La. 2006), this Court held that health care providers against whom malpractice claims were alleged were improperly joined for the purpose of diversity jurisdiction.   In *Jones* and *Senia*, the plaintiff had initiated a complaint before a medical review panel with the Louisiana Division of Administration for medical malpractice against the health care provider at issue, but that complaint had not yet been resolved.   A defendant with diverse citizenship from the plaintiff (and the in-state health care provider) removed the matter to federal court, asserting that the hospital was improperly joined because a lawsuit could not be initiated against the hospital until the medical review panel had completed its review.   In each case this Court held that the in-state health care provider was improperly joined, and disregarded the hospital's citizenship for the purpose of evaluating diversity jurisdiction in that case.   In both cases, the court denied the plaintiffs' motions to remand.  *See also Fontenot v. Johnson & Johnson, et al.*, 2010 U.S. Dist. LEXIS 60163 (W.D. La., Apr. 30, 2010) (adopted by *Fontenot v. Johnson & Johnson,* 2010 U.S. Dist. LEXIS 60234 (W.D. La., June 17, 2010) (accord).

>  **a.**   **A lawsuit against TUHC and its insurer is premature before a decision is reached by a medical review panel.**

Although in Plaintiffs' Supplemental and Amending Class Action Petition for Damages Plaintiffs focus attention on the communication of a potential risk to patients via a letter, Plaintiffs have alleged that the alleged risk arose when TUHC provided medical care and treatment to Plaintiffs in the form of endoscopies.[10]   Therefore, TUHC is a qualified healthcare provider as defined by the Louisiana Medical Malpractice Act (hereinafter "LMMA"), and, as such, is subject to protection afforded to qualified healthcare providers under that law.  TUHC's status as a qualified healthcare provider is demonstrated by its certificate of enrollment in the Patients' Compensation Fund.[11]   Louisiana courts hold that such certificates are "competent evidence to establish a prima facie case for the applicability of the medical malpractice law regarding claims against the party identified on the certificate." *Roark v. Liberty Healthcare Sys., LLC*, 26 So. 3d 968, 973-974 (La. App. 2 Cir. 2009) (*citing* La. R.S. 13:3711, 3712; *Hill v. Brentwood Hosp.*, 480 So.2d 875 (La. App. 2d Cir. 1985); *Goins v. Texas Optical, Inc.*, 463 So.2d 743 (La. App. 4th Cir. 1985)).

In general, any conduct by a hospital complained of by a patient is properly within the scope of the LMMA if it can be said that it comes within the definitions of the Act, even though there are alternative theories of liability.  See *Dominick v. Rehabilitation Hospital of New Orleans,* 97-2310 (La. App. 4 Cir. 4/15/98); 714 So. 2d 739, *Dinat v. Texada,* 09-665 (La. App. 3 Cir. 2/10/10), 30 So. 3d 1139; *Cashio v. Baton Rouge General Hospital,* 378 So.2d 182 (La. App. 1st Cir. 1979).  As the provisions of the LMMA apply, Plaintiff's Petition for Damages is premature.  *See* La. R.S. 40:1299.47.

The LMMA defines malpractice covered by the Act as follows:

---

[10] *See* Exhibit 1, ¶¶ 8, 9, 13.

[11] *See* Certificate of Enrollment in a Patients' Compensation Fund for TUHC, attached hereto as Exhibit "4".

> ***any*** unintentional tort or any breach of contract ***based on health care professional services rendered***, ***or which should have been rendered by a health care provider to a patient***, ***including failure to render services timely in the handling of a patient***, including loading and unloading of the patient and ***also includes all reasonable responsibilities of a health care provider arising from acts and omissions in the training or supervision of health care providers*** or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient. (Emphasis added).

La. R.S. 40:1299.41(A)(13) (emphasis added).

In *Cashio, supra,* the plaintiffs filed suit after a patient died from a staph infection contracted during coronary bypass surgery. The plaintiffs, much like the plaintiffs in this case, attempted to circumvent the LMMA by filing a lawsuit rooted upon the duty owed by a premises owner under La. C.C. art. 2317.  Defendant filed an exception of prematurity.  In reversing the trial court, the First Circuit held that the LMMA applied because "treatment" and thus "health care" includes furnishing a clean and sterile environment. *Cashio,* 382 So.2d at 184.  The court rejected plaintiffs' argument that the LMMA did not apply because the hospital was being sued as a premises owner rather than health care provider and because the hospital could be strictly liable under La. C.C. art. 2317.  Moreover, the Court specifically noted "a plaintiff cannot control the progress and procedure of his claim by semantically designating one capacity of two or more belonging to the defendant as the desired one when the statute requires a procedure if the claim fits within its definition." *Cashio,* 382 So.2d at 185.  Plaintiffs in this case have alleged premises liability in his Petition for Damages, presumably under Civil Code article 2317, however, as in *Cashio,* this case is rooted in medical malpractice and as such, allegations of premises liability or any other general negligence theory cannot circumvent the LMMA.

Aside from *Cashio,* other courts have found allegations centering on or arising out medical equipment issues constitute medical malpractice. *Renz v. Ochsner Foundation*

*Hospital/Clinic,* 420 So.2d 1008 (La. App. 5th Cir. 1982); *Richardson v. Advanced Cardiovascular Systems, Inc.,* 865 F.Supp. 1210 (E.D. La. 1994). In *Renz,* the court held allegations pertaining to the malfunction of a medical life support system is part of "professional services rendered" and thus falls within the definition of malpractice. *Renz*, 420 So. 2d at 1010. In *Richardson,* the court found allegations concerning the failure of a balloon during an angioplasty procedure fit within the definition of "malpractice" and thus the plaintiffs' petition for damages was premature. Here, this Court should focus on Plaintiff's allegations in their entirety and not any single allegation standing alone. *Taylor v. Christus Southwestern Louisiana,* 04-627 (La. App. 3 Cir 11/10/04); 886 So.2d 696.

The scope of acts and omissions that are "treatment related" include maintaining safeguards to ensure the safety of vulnerable patients, as well as providing medical care consistent with appropriate standards. *See Meseke v. St. Francis Medical Center*, 40,317 (La. App. 2 Cir. 10/26/05), 914 So. 2d 136, 139 (the scope of activities that were covered by the LMMA included responding to a patient's call for assistance and transporting him to the bathroom).

Health Care Indemnity, Inc. is being sued as an insurer for TUHC.[12]  Although Health Care Indemnity, Inc. is not a health care provider, the State Court Action would be premature against it in accordance with LSA-R.S. 40:1299.47(B)(1)(a)(i) ("No action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section.")

---

[12] *See* Exhibit 1, ¶ 21.

> **b.**     **The *Coleman* factors warrant dismissal of Plaintiffs' claims against TUHC and its insurer as premature.**

The Louisiana Supreme Court set forth six factors in *Coleman* v. *Dena,* 2001-1517 (La.1/25/02); 813 So. 2d 303, to assist courts in determining whether certain conduct by a qualified health care provider constitutes malpractice as defined under the LMMA. The *Coleman* factors are:

> a)  whether the injury was treatment related or caused by dereliction of professional skill;

> b)  whether the wrong requires expert medical evidence to determine whether the applicable standard of care was breached;

> c)  whether the act involved assessment of the patient's condition;

> d)  whether the incident occurred in the context of the physician patient relationship or was within the scope of activities which a hospital is licensed to perform;

> e)  whether the injury would have occurred if the patient had not sought treatment; and

> f)  whether the tort was intentional.

*Coleman,* 813 So.2d at 315-316.

> **i. As plead, the alleged injury was treatment related and/or caused by an alleged dereliction of professional skill.**

Health care is defined in Louisiana Revised Statue 40:1299.41 as "any act or treatment performed or furnished, or which should have been performed or furnished by any health care provider for, to, or on behalf of the patient during a patient's medical care, treatment or confinement."  One of the principal duties owed by a hospital to its patients is the furnishing of a clean and sterile environment. Indeed, the furnishing of such an environment is an integral component of the treatment which hospitals provide to their patients. *Cashio,* 378 So.2d at 184 (holding the definition of treatment includes "the furnishing of a clean and sterile environment

for all patients"). There can be no dispute that allegations concerning a hospital's failure to provide a clean and sterile environment, which is the essential allegation in this case, amount to an alleged dereliction of professional skill related to the treatment of patients.

**ii. Expert medical evidence is needed to determine if appropriate standard of care was breached by TUHC.**

The standard of care required of a hospital in providing for sterility of its facility and the equipment utilized in endoscopic procedures is not common knowledge and cannot be inferred by a lay jury. This is evidenced by the fact that a lay jury would not be familiar with local, state and internal regulations and procedures for ensuring the sterility of a hospital and its equipment. Expert testimony will be needed to establish the standard of care in preparing for and in performing endoscopic procedures and whether there was a breach of the standard of care in the methods it utilized in performing the procedures at issue.

**iii. Alleged act or omission involved assessment of the patient's condition.**

While one may argue a patient's contraction or fear of contraction of a serious illness, such as hepatitis or HIV, does not involve the assessment of a patient's condition, the allegations in Plaintiff's Petition establish that the purported negligence and claimed damages occurred in conjunction with the treatment and assessment of Plaintiff, during the endoscopic procedure at issue.

**iv. Alleged incidents took place in context of physician-patient relationship and within the scope of activities which a hospital is licensed to perform.**

The fourth *Coleman* factor is satisfied as there can be no dispute that the very procedure at issue in this case constitutes and is within the scope of activity which TUHC is licensed to perform.

**v. Any alleged injuries would not have occurred in this manner if the patient(s) had not sought treatment by TUHC.**

As alleged by Plaintiffs, John Doe was a patient of TUHC receiving medical treatment in the form of endoscopies. As such, common sense indicates that a claim based on failure to properly perform the endoscopic procedure, i.e. provide adequate care for patients, is specifically linked to treatment. *Coleman,* 813 So.2d at 315.

**vi. The alleged tort was not intentional.**

The sixth and final Coleman factor is satisfied as Plaintiffs do not allege TUHC committed an intentional tort.

Applying all of the *Coleman* factors to the facts and allegations of this case establishes the plaintiffs are alleging an unintentional tort based on the professional services that a hospital is licensed to perform, or which should have been rendered by the TUHC to its patients. As such, the Louisiana Medical Malpractice Act applies to this matter.

**B.     The jurisdictional amount for removal under 28 U.S.C. § 1332(a) is satisfied.**

In order for federal jurisdiction to be present under 28 U.S.C. § 1332(a), the amount in controversy for at least one plaintiff must exceed $75,000.  The defendant need only show by a preponderance of the evidence that the jurisdictional amount is met.  *Gibson v. Canal Ins. Co.*, 2004 U.S. Dist. LEXIS 4666 (E.D. La. Mar. 18 2004).  A defendant can meet this burden either by showing that it is facially apparent from the nature and amount of the claims that they are likely to be above the requisite amount, or by setting forth the facts which would support a finding of the requisite amount.  *Id.*

Under La. C.C.P. Art. 893(a)(1) as amended by Acts 2004, No. 334, **if a claim is for less than the requisite amount for the exercise of federal jurisdiction, a plaintiff is <u>required</u> to so allege in the petition**. Here, the Supplemental and Amending Class Action Petition for

Damages contains no such limitation.  This omission may be taken into account to tend to show that the claim is intended to exceed the federal jurisdictional amount.  *See Haydel v. State Farm Mut. Auto. Ins. Co.*, 2008 U.S. Dist. LEXIS 122272 (M.D. La. June 10, 2008) at *21 ("this court has held that the failure to make such an allegation is not, in and of itself, determinative of the amount in controversy; however, such failure is entitled to 'some consideration' in making the jurisdictional amount determination").

Further the facts pled in the petition, taken as true for this purpose, support finding that the jurisdictional amount is met.  Plaintiffs allege that the putative class members were negligently exposed to "infectious diseases, namely HIV, Hepatitis B, and Hepatitis C."[13]

- In *Cotita v. Pharma-Plast, U.S.A., Inc.*, 974 F.2d 598 (5th Cir. 1992), while providing nursing services to an AIDS patent, a nurse was stuck by a syringe manufactured by the Defendant.  The syringe, still in its sterile packaging, was missing the protective cap that normally covers the tip of the needle.  Because of the presence of the patient's blood on the nurse's gloves at the time of the stick, the plaintiff feared exposure to the HIV virus.  Although reduced by comparative fault, the jury award was in the amount of **$150,000.00.**

- In *Emery v. Owens-Corporation*, 00-2144 (La. App. 1 Cir. 11/9/01), 813 So.2d 441, the jury awarded **$200,000** for his past, present & future mental anguish which included plaintiff's fear of contracting cancer as a result of his exposure to asbestos.  Plaintiff had suffered asbestosis.

- In *David v. Our Lady of Lake Hosp., Inc.* 2002-1945 (La. App. 1 Cir. 6/27/03), 857 So.2d 529, the trial judge awarded plaintiff, who had contracted hepatitis C, **$632,000** for

---

[13] *See, e.g.,* Exhibit 1, ¶ 14(a).

12

mental pain and suffering; and **$895,000** for emotional distress, fear of cancer, and loss of enjoyment of life.

- In *Dodson v. Community Blood Center*, 633 So.2d 252 (La. App. 1st Cir. 1993), the trial judge awarded **$275,000** due to contracting hepatitis C through blood transfusions. $50,000 was for loss of enjoyment of life and past pain and suffering, $75,000 was for past mental anguish, and $150,000 was for future mental anguish.

In light of the foregoing, once again, accepting Plaintiff's allegations as true for this purpose, by a preponderance of the evidence, Plaintiffs have placed into controversy in excess of $75,000, satisfying the jurisdictional amount in controversy under 28 U.S.C. § 1332(a).

**D.      This removal is timely.**

Plaintiffs filed their Motion to File Supplemental and Amending Class Action Petition for Damages was filed on or about August 25, 2011, in the Civil District Court, in and for Orleans Parish, Louisiana, which included allegations adding General Electric as a defendant to the underlying state court case.[14]   Judge Paulette Irons, of the Civil District Court, signed an order granting leave to file the Supplemental Petition on September 6 or 7, 2011.[15]   Until the Supplemental Petition was filed and served on Defendants, the case was not removable, because General Electric had not yet been added as a defendant.  Fewer than 30 days have passed since the date the initial pleadings for the State Court Action against General Electric were filed, thus, this Notice of Removal was timely filed within the 30-day deadline set forth in 28 U.S.C. §1446(b).[16]

---

[14] *See* Exhibit 1.

[15] *See* Order that the Supplemental and Amending Class Action Petition for Damages be filed, dated both September 6 and 7, 2011, attached hereto as Exhibit "5".

[16] Although not necessary to show that this action is being timely removed to federal court, General Electric notes for the Court's information that it has not been served with process, to date.

**E.**     **Conclusion**

This action is one over which the district courts of the United States are given original jurisdiction.   The value of the matter in controversy exceeds $75,000.   There is complete diversity of citizenship between the plaintiffs and the properly joined defendant.   The properly joined defendant is not a citizen of the State of Louisiana.   The time within which removal must be effected has not expired.

A list of all parties, and all attorneys and the parties they represent, in the state court proceedings is attached to this Notice as Exhibit "6".

Under 28 U.S.C. §1446(a), the removing defendant must file "a copy of all process, pleadings and orders served upon such defendant or defendants in such action." Again, General Electric has not been served with process, but has attached a copy of the Supplemental and Amending Class Action Petition for Damages that it has obtained as Exhibit "1".

A certified copy of the entire state court record has been obtained from the Clerk of Court for the Civil District Court for the Parish of Orleans, and is attached *in globo* as Exhibit "7".

Written notice of this removal has been served on counsel for Plaintiffs, TUHC, and Health Care Indemnity, Inc. by facsimile transmission, and by placement in the United States Mail, properly addressed and postage pre-paid.

A copy of this removal is being filed with the Clerk of Court for the Civil District Court, Parish of Orleans, State of Louisiana, by hand delivery.

ACCORDINGLY, the defendant, General Electric, asks that this matter proceed in the United States District Court for the Eastern District of Louisiana, as a matter properly removed.

Respectfully Submitted,

**COTTEN SCHMIDT & ABBOTT, L.L.P.**


s/Charles H. Abbott

| | |
|---|---|
| **CHARLES H. ABBOTT** | (La.  Bar No. 27930) |
| **BYRON D. KITCHENS** | (La.  Bar No. 25129) |
| **RYAN C. WALLIS** | (La. Bar No. 28259) |

650 Poydras Street, Suite 2810
New Orleans, Louisiana  70130
Telephone:  504/568-9393
Facsimile:   504/524-1933
**Counsel for General Electric Company**